**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **DANAHER CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | C.A. No. _____ |
| | ) | |
| **JOSEPH RODRIGUEZ,** | ) | **JURY DEMANDED** |
| | ) | |
| **Defendant**. | **)** | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Danaher Corporation ("Danaher") files this Original Complaint ("Complaint") against Defendant Joseph Rodriguez ("Rodriguez"). In support of its Complaint, Danaher states as follows:

## NATURE OF ACTION

1.   This is an action for breach of contract, threatened and actual misappropriation of confidential and trade secret information, conversion, breach of fiduciary duty and violation of the Computer Fraud and Abuse Act. Danaher seeks injunctive relief, in addition to other damages.

2.   Rodriguez is violating his contractual obligations pursuant to his agreements with Danaher, as well as applicable federal and state laws, by his disloyal and unauthorized acts prior to his employment termination including misappropriating Danaher's confidential and trade secret information and other electronic files and then destroying evidence of such misappropriation.

3.   Danaher seeks to: (i) enjoin Rodriguez from using or disclosing Danaher's confidential and trade secret information; (ii) require Rodriguez to return Danaher's confidential and trade secret information that is in his possession; and (iii) require a forensic

evaluation of each and every device Rodriguez used to download Danaher's confidential and trade secret information to determine how he has disseminated any of Danaher's electronic information and to remove any such information from the device(s).

## PARTIES

4.      Danaher is a Delaware corporation with its principal place of business in the District of Columbia.

5.      Rodriguez is a citizen and resident of the State of Texas and may be served with process at 375 Whispering Oaks Drive, Double Oak, Texas 75077.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs.   This Court also has original jurisdiction under 28 U.S.C. § 1331 because Danaher brings a claim pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  This Court has supplemental jurisdiction over Danaher's state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Rodriguez because he is a resident of this District.

8.      Venue is proper in this Court because Rodriguez resides in this District and a substantial part of the events giving rise to Danaher's claims occurred in this District.

## BACKGROUND

**Danaher's Business And Confidential Information**

9.      Danaher and its affiliated companies are in the business of designing, manufacturing, and marketing professional, medical, industrial, and consumer products. Danaher's business activities encompass four reporting segments and are comprised of six

strategic platforms: Medical Technologies, Professional Instrumentation (Environmental, Electric Test), Industrial Technologies (Motion, Product ID, Focused Niche Businesses) and Tools & Components (Mechanic's Hand Tools).

10.     A fundamental and important part of Danaher's business is the development and maintenance of Confidential Information, as defined below, regarding its employees, its employee candidate and applicant funnel, its products, its customers, and the marketplace. Danaher's Confidential Information is not known outside of Danaher.  Any competitor that acquired Danaher's Confidential Information or the benefit of such information without investing the time and resources invested by Danaher would improperly obtain an unfair competitive advantage.

11.     Danaher takes reasonable precautions to prevent disclosure of its Confidential Information to third persons.  Danaher maintains its Confidential Information in a central location and on password protected computer systems, allowing limited access to its employees, and requiring, among other things, its employees, like Rodriguez, to execute confidentiality and non-disclosure agreements with Danaher.  As a result, Danaher's compilation and organization of this information is not available to and is not readily ascertainable by its competitors and has given Danaher a valuable economic and competitive advantage in the industries it serves.

12.     The time, expense, and effort that has gone into the development of Danaher's Confidential Information is such that the independent development of identical or comparable materials by competitors of Danaher would be extraordinarily difficult and expensive.  By collecting and maintaining such information regarding its potential and actual employees, its products, its customers, and the marketplace, Danaher has developed and maintained, at great expense, substantial goodwill.  The possession, use, or dissemination of Danaher's Confidential

Information by persons adverse to Danaher would diminish Danaher's competitive advantage and would, as a result, cause irreparable injury to Danaher's business.

**Rodriguez's Employment With Danaher**

13.     Rodriguez began his employment as Vice President of Talent Acquisition with Danaher in June 2007.

14.     In June 2007, and in connection with his employment, Rodriguez entered into a non-competition agreement ("Agreement") containing the following nondisclosure provisions in Section 4 of the Agreement:

> [Rodriguez] agrees with [Danaher] that [he] will not at any time during [his] employment by [Danaher] or at any time after any termination of said employment, whether it be voluntary or involuntary, except in performing [his] employment duties to [Danaher] or any affiliate of [Danaher] under this Agreement, directly or indirectly, use, disclose, or publish . . . (1) any information or other assets or property of [Danaher] or any of its affiliates, in whatever form, **including without limitation the Danaher Business System and any information relating to any current or former employee of [Danaher]**, or (2) without limiting the foregoing, **any Confidential Information** that [Rodriguez] may learn or become aware of, or may have learned or become aware of, because of [Rodriguez's] prior or continuing employment, ownership, or association with [Danaher] . . .

Emphasis added.[1]

Confidential Information was defined in the Agreement to include, without limitation:

> any matters protected under the Uniform Trade Secrets Act and any information that neither [Danaher] nor any of its affiliates has previously disclosed to the public with respect to the present or future business of [Danaher] or of any of its affiliates, including their respective operations, services, products, research, inventions, invention disclosures, discoveries, drawings, designs, plans, processes, models, technical information, facilities, methods, systems, trade secrets, copyrights, software, source code, object code, patent applications, procedures, manuals, specifications, any other intellectual property, **confidential reports**, price lists, pricing formulas, customer lists, financial information (including the revenues, costs, or profits associated with any products or services), **Talent Reviews**

---

[1]     All exhibits supporting this Complaint, including: (1) Rodriguez's Noncompetition Agreement; and (2) Standards of Conduct are attached hereto as Exhibits 1 and 2.

>**and Organizational Plans, business plans, information regarding all or
>any portion of the Danaher Business System**, lease structure, projections,
>prospects, opportunities or strategies, acquisitions or mergers, advertising
>or promotions, **personnel matters**, legal matters, any other confidential or
>proprietary information, and any other information not generally known
>outside [Danaher] and its affiliates that may be of value to [Danaher] or any
>of its affiliates, but excludes any information already properly in the public
>domain. "Confidential Information" also includes, without limitation,
>**confidential and proprietary information and trade secrets that third
>parties entrust to [Danaher]** or any of its affiliates in confidence.

Emphasis added.  The Agreement further provided:

>[Rodriguez] confirms that all assets and properties of [Danaher] and its
>affiliates, including without limitation Confidential Information, is and
>must remain the exclusive property of [Danaher] or the relevant affiliate
>thereof. All such assets and property, including without limitation all office
>equipment (including computers) [Rodriguez] receives from [Danaher] or
>any affiliate thereof in the course of [Rodriguez's] employment and all
>business records, business papers, and business documents [Rodriguez]
>keeps or creates, whether on digital media or otherwise, in the course of
>[Rodriguez's] employment relating to [Danaher] or any affiliate thereof,
>must be and remain the assets and property of [Danaher] or the relevant
>affiliate . . . **upon [Danaher's] request at any time, [Rodriguez] must
>promptly deliver to [Danaher] or to the relevant affiliate all such assets
>and property, including without limitation any such office equipment
>(including computers) and any Confidential Information or other
>records or documents (written or otherwise), and any copies, excerpts,
>summaries or compilations of the foregoing, made by [Rodriguez] or
>that came into [Rodriguez's] possession during [Rodriguez's]
>employment**. [Rodriguez] agrees that he or she will not retain any such
>assets or property, including without limitation copies, excerpts, summaries,
>or compilations of the foregoing information, records and documents.

15.     During all relevant times herein, Rodriguez was the Vice President of Talent for

Danaher.  A significant part of Rodriguez's responsibilities at Danaher included external talent

acquisition.  Specifically, identifying high potential individuals for employment at Danaher for

key leadership positions as well as identifying internally individuals within Danaher for

additional development, training, and leadership opportunities.  He is also intimately familiar

with Danaher's proprietary candidate funnel, recruiting activities and applicants.

16.     While working at Danaher, Rodriguez received a six figure base salary. Rodriguez was also entrusted with access to Danaher's Confidential Information, which includes, but is not limited to, confidential reports, Talent Reviews and Organizational Plans, business plans, information regarding all or any portion of the Danaher Business System, personnel matters, and confidential and proprietary information and trade secrets that third parties entrust to Danaher.  Rodriguez utilized this Confidential Information in performing his duties for Danaher.

17.     Danaher values its employees and fosters and develops goodwill through its identification, selection and retention of the talented individuals that contribute to its business success.  Rodriguez has been vital to Danaher's ability to develop and maintain that goodwill. Specifically, Rodriguez knows the abilities, compensation and opportunities for advancement of key Danaher employees and candidates for employment.

18.     Rodriguez himself was a key Danaher employee who attended high level meetings and had limited access to Confidential Information, such as product information, research, price lists, pricing formulas, customer lists, and financial information (including the revenues, costs, or profits associated with any products or services).   Such Confidential Information concerned Danaher's intellectual property, products, customers, and market strategies.

**Rodriguez' Misappropriation Of Danaher's Confidential And Trade Secret Information**

19.     Based upon a forensic review, between, on or about April 7, 2010 and May 11, 2010, Rodriguez, without authority, reviewed his talent review document on Danaher's

computer systems in violation of Danaher standards and policy[2].  The talent review document indicated that Danaher intended to terminate Rodriguez's employment as soon as it was practical to do so.

20.     Further, the forensic investigation revealed that, beginning on or about April 22, 2010 and thereafter, Rodriguez accessed and downloaded large quantities of Danaher's electronic files to various electronic media storage devices.   Rodriguez continued these activities through August 2010.  The downloaded files included files that contained Danaher's Confidential Information.  Danaher did not have any knowledge of Rodriguez's downloading activities at this time.

21.     Kevin Klau, Danaher's Vice President Corporate Human Resources, and Rodriguez agreed to meet on August 17, 2010 at 3:00 p.m. to discuss the status of Rodriguez's employment with Danaher.  During the meeting, Klau informed Rodriguez in person that his employment was being terminated effective September 27, 2010.  Klau took possession of Rodriguez's company computer at the conclusion of the meeting.

22.     Later, forensic analysis revealed that in the hours before the August 17th meeting was to take place, a user logged in under the Joseph Rodriguez account took affirmative action to download and then permanently and purposefully remove files and Internet browsing history from his company computer through both manual deletion and the subsequent use of third-party anti-forensic software.  Specifically, the user logged in under the Joseph Rodriguez account installed datawiping software called R-Wipe & Clean on his company computer at 10:10 a.m. on August 18, 2010.  Within five minutes of installation, the user executed the wiping program, which ran until approximately 1:03 p.m. and permanently and destructively wiped and deleted

---

[2]         Danaher discovered most of the following information after it performed a forensic analysis of Rodriguez's company computer.  It was discovered that Rodriguez saved all of this information, including his talent review document, to various electronic media storage devices.

over 15,000 files (which was approximately 13% of the computer's entire hard drive based on file count) and he removed the wiping software almost immediately after destruction of Danaher's data.

23.     Later forensic analysis performed on Rodriguez's company computer revealed, however, that some deleted files were in fact retrievable as they had not been subject to the wiping event.  Some of these files contained Danaher's Confidential Information, including, for example, files concerning Danaher's 2010 budget, strategic recruiting, status reports, placement of candidates, resumes, offer letters, staffing processes, search plans, a significant number of contacts, interview guidelines, data from Danaher's online interview system and files from third-party sources.  Certain retrieved files even contained confidential disclaimers.

24.     Forensic analysis also revealed that Rodriguez utilized numerous electronic media storage devices to download information from and make complete backups of his company computer, including downloads and backups on August 17, 2010.  Further, the review indicated that Rodriguez's computer had been connected to approximately 19 different electronic media storage devises to download Danaher's Confidential Information and other electronic data during the course of his employment, of which only ten drives have been provided to Danaher for forensic analysis, along with assorted discs.

25.     On or about August 24, 2010, Klau told Rodriguez he was concerned Rodriguez downloaded numerous Danaher files prior to their August 17th meeting.  Rodriguez first denied such activity, but when Klau disclosed that he could provide serial numbers for the devices used for Rodriguez's improper downloads, Rodriguez then falsely claimed the files at issue were personal files.  Forensic analysis revealed that such files had business related names and folder structures and did not consist of any photos, music, pictures or other personal documents.  Klau

advised Rodriguez not to alter, destroy or compromise in any way Danaher's information contained on any computer, Blackberry or other electronic media storage device.  Klau further requested that Rodriguez provide Danaher with the three specific electronic media storage devices used on August 17th.[3]

26.    In sum, the forensic examination of Rodriguez's company computer and the review of certain electronic media storage devices reveal that Rodriguez has taken a significant number of electronic files containing Confidential Information from Danaher that were created by and for Danaher and their protection is critical to Danaher's success.  As the forensic analysis also revealed, Rodriguez even went so far as to attempt to destroy evidence that he had downloaded electronic files containing Confidential Information.  Rodriguez's activities described herein were not authorized by Danaher and did not serve any Danaher business purpose or interest.

27.    Moreover, despite being advised not to alter any information or devices in this matter and being requested to return all Danaher property, on September 20, 2010, while purporting to return to Danaher devices containing Danaher proprietary information, Rodriguez falsely told the Danaher representative to whom he was returning the media that he was specifically instructed by in-house Danaher counsel to have the Danaher representative witness his deletion of e-mails sent from his Danaher e-mail account to his personal e-mail account, presumably containing relevant evidence and Danaher proprietary data.   Such activity was not authorized by Danaher.

28.    To date, Danaher does not know what information is contained on the remaining electronic media storage devices that have yet to be forensically analyzed.  Danaher also does

---

[3]    Danaher requested devices (a company external hard drive and two of Rodriguez's personal flash drives) with serial numbers 20051536410A3B234810&0, 0KPUXFPUMJ59JHIS&0, and 2GE48ZD7&0.

not know what information Rodriguez downloaded from Danaher's computer systems that was later permanently deleted or what Rodriguez did or intends to do with the numerous electronic files he downloaded from Danaher's computer systems.   Further, Danaher does not know at this time what other devices Rodriguez transferred Danaher's property to once he removed it from Danaher.

29.   Danaher knows of no other purpose for which, Rodriguez took this Confidential Information other than for his own benefit and purpose.   Rodriguez is wrongly in possession or control of Danaher's Confidential Information and in the absence of injunctive relief, will continue to possess and use this Confidential Information.   His use and/or improper possession of this information, which provides Danaher its competitive edge in the marketplace, harms Danaher.   Danaher has been, and will continue to be, significantly and irreparably injured as a result of Rodriguez's actions.   Given Rodriguez's position at Danaher, Danaher's employee base, candidate pipeline are threatened, and will remain threatened, unless Rodriguez is enjoined.   In addition, Danaher's goodwill, reputation, market share, customer relationships and intellectual property developed over many years at substantial effort and expense is also threatened by Rodriguez's possession of Danaher's Confidential Information.   Finally, the value of Danaher's Confidential Information is being diminished as a result of Rodriguez's unauthorized possession and use of that information.

30.   Remedies at law are inadequate to address these harms; therefore, injunctive relief is appropriate because the facts show that: (1) Danaher has a substantial likelihood of success on the merits; (2) Danaher will suffer irreparable injury unless an injunction issues; (3) the threatened injury to Danaher outweighs any possible injury an injunction may cause Rodriguez; and (4) an injunction here would not disserve the public interest.

31.     Rodriguez himself acknowledged in the Agreement that injunctive relief is appropriate in this circumstance.  Section 4 of the Agreement provides that:

> [Rodriguez] acknowledges and agrees that damages are an inadequate remedy for any breach of the terms and conditions set forth in **Sections 2, 3, 4, 5 and 15 of this Agreement** and agrees that in the event of a breach of such paragraphs, [Danaher] may, with or without pursuing any remedy for damages, immediately obtain and enforce an ex parte, preliminary and permanent injunction prohibiting [Rodriguez] from violating this policy. Further, in any civil action brought for a breach of this Agreement, [Danaher] shall be entitled to recover from [Rodriguez] all reasonable attorneys' fees, litigation expenses, and costs incurred by [Danaher] if [Danaher] prevails in that action.

Emphasis added.  Rodriguez clearly breached Section 4 of the Agreement.

## COUNT I

## **BREACH OF CONTRACT**

32.     Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

33.     In the Agreement, Rodriguez promised not to use or disclose Danaher's confidential or trade secret information, which he has done in breach of his agreement not to do so.

34.     Additionally, the Agreement is a valid and enforceable contract, and Danaher has fully performed all of its obligations under the Agreement.

35.     By his actions, Rodriguez breached, is breaching, and is threatening to continue to breach his Agreement in at least one of the following ways:  possessing and/or failing to return Danaher's confidential and trade secret information; and using and/or disclosing Danaher's confidential and trade secret information.

36.     After signing the Agreement and throughout his employment, including after the execution of the Agreement, Danaher gave Rodriguez a significant amount of confidential and

trace secret information for which he did not previously have access.

37.     As a result of Rodriguez's breaches of contract, Danaher has been injured and faces irreparable injury.  Danaher is threatened with losing key employees, income, goodwill and possibly intellectual property and customer relationships for which a remedy at law is inadequate and thus, Rodriguez must be enjoined and restrained by Order of this Court.

## COUNT II

## VIOLATION OF D.C. UNIFORM TRADE SECRET PROTECTION ACT

38.     Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

39.     Rodriguez is misappropriating and/or threatening to misappropriate Danaher's confidential and trade secret information under both the common law and the D.C. Uniform Trade Secret Protection Act.

40.     Under the D.C. Uniform Trade Secret Protection Act, a party may obtain an injunction against "[a]actual or threatened misappropriation" of a trade secret.  D.C. Code § 36-402.[4]  Danaher can show (1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose. Further, Danaher's information is secret, its value derives from its secrecy and reasonable efforts are used to safeguard its secrecy.

41.     Rodriguez has used improper means or means that fall below the generally accepted standards of commercial morality and reasonable conduct by downloading, and removing Danaher's proprietary information.

42.     Danaher's Confidential Information qualifies as a trade secret.  The information

---

[4]     The Agreement states that the laws of the District of Columbia apply without regard to conflicts of law principles.

includes, among other things: (1) financial information (including the revenues, costs, or profits associated with any products or services), Talent Reviews and Organizational Plans, business plans, information regarding all or any portion of the Danaher Business System, lease structure, projections, prospects, opportunities or strategies, acquisitions or mergers, advertising or promotions, personnel matters and legal matters; (2) confidential reports, price lists, pricing formulas and customer lists; and (3) operations, services, products, research, inventions, invention disclosures, discoveries, drawings, designs, plans, processes, models, technical information, facilities, methods, systems, trade secrets, copyrights, software, source code, object code, patent applications, procedures, manuals, specifications and any other intellectual property.

43.     This information is secret, its value derives from its secrecy, and Danaher has used and uses reasonable efforts to safeguard its secrecy.  Danaher's Confidential Information is not publicly available and possesses independent economic value by virtue of not being generally known to, nor readily ascertainable by, other persons who could benefit financially from its disclosure or use.  That the information is secret and valuable is further evidenced by the fact that Rodriguez surreptitiously copied the information, lied about having stolen the information, and then unsuccessfully attempted to destroy evidence of his theft.

44.     Rodriguez also acquired Danaher's confidential and trade secret information as a result of the confidential relationship he had with Danaher and that he has or threatens to use or disclose the protected information due to his downloading and related deceptive conduct and false statements to Danaher about his activities.  Rodriguez had access to the information only because and only after he signed the Agreement in which he agreed to maintain the secrecy of the information and not to disclose the information or to use it to compete with Danaher.

Danaher would not have disclosed the information to Rodriguez if he had refused to sign the Agreement.

45.     These facts are sufficient to establish that Rodriguez has or threatens to misappropriate Danaher's confidential and trade secret information by obtaining the information through improper means and then by or threatening to use or disclose the information.  Stealthily copying confidential and trade secret information from one's employer after having learned of ones termination, transferring that information to other computers, and then attempting to cover up those actions are means that fall below the generally accepted standards of commercial morality and reasonable conduct and suggest that Rodriguez is using and/or disclosing the information.

46.     On information and belief, Rodriguez's actions have been willful and malicious.

47.     As a result of Rodriguez's misappropriation of Danaher's Confidential Information, which includes trade secrets, Danaher is threatened with losing key employees, income, goodwill and possibly intellectual property and customer relationships for which a remedy at law is inadequate and thus, Rodriguez must be enjoined and restrained by Order of this Court.

## COUNT III

## <u>MISAPPROPRIATION OF TRADE SECRETS</u>

48.     Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

49.     The Confidential Information entrusted to Rodriguez by Danaher includes trade secrets because Danaher derives independent economic value from that information; such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and the information is the subject of

reasonable efforts to maintain its secrecy.

50.     Rodriguez actually misappropriated and/or threatens to misappropriate Danaher's confidential and trade secret information without Danaher's consent in violation of Texas law.

51.     Rodriguez has been and/or will be unjustly enriched by this misappropriation of Danaher's confidential and trade secret information, and, unless restrained, will continue to threaten to use, actually use, divulge, acquire and/or otherwise misappropriate Danaher's confidential and trade secret information.

52.     On information and belief, Rodriguez's actions have been willful and malicious.

53.     As a result of Rodriguez's misappropriation of Danaher's Confidential Information, which includes trade secrets, Danaher is threatened with losing key candidates and employees, income, goodwill and possibly intellectual property and customer relationships for which a remedy at law is inadequate and thus, Rodriguez must be enjoined and restrained by Order of this Court.

## COUNT IV

## <u>VIOLATION OF TEXAS THEFT LIABILITY ACT</u>

54.     Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

55.     By his failure to return Danaher's confidential and trade secret information, Rodriguez unlawfully appropriated the information with the intent to deprive Danaher of its use.

56.     Rodriguez's unlawful appropriation of Danaher's confidential and trade secret information has caused Danaher actual damages, which are within the jurisdictional limits of this Court, for which it seeks judgment.

57.     Pursuant to section 134.005 of the Texas Civil Practices and Remedies Code, Danaher is entitled to recoup its reasonable and necessary attorneys' fees if successful on its claim against Rodriguez under the Texas Theft Liability Act.  Accordingly, Danaher prays that upon final trial or hearing, that it be awarded reasonable and necessary attorneys' fees against Rodriguez, and pre- and post-judgment interest as allowed by law.

## COUNT V

## <u>CONVERSION</u>

58.     Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

59.     Danaher was and still is the owner of the electronic files downloaded by Rodriguez, whether or not such files were maintained by Rodriguez in connection with the performance of his duties for Danaher.

60.     As of the date of his termination, Rodriguez unlawfully and without authority assumed dominion and control over Danaher's property to the exclusion of Danaher's rights in the property by having removed the electronic files from Danaher's property.

61.     Danaher is entitled to the fair market value of the property that Rodriguez took, as well as pre-judgment interest.

62.     Rodriguez's conversion of Danaher's property, as alleged above, was malicious in that Rodriguez knew that the property converted belonged to Danaher, but has not returned a majority of the downloaded files despite his knowledge that Danaher is aware of the conversion.   Accordingly, Danaher asks that exemplary damages be awarded against Rodriguez.

63.     As a result, Danaher has been injured and faces irreparable injury.  Danaher is threatened with losing key candidates and employees, income, goodwill and possibly

-16-

intellectual property and customer relationships for which a remedy at law is inadequate and thus, Rodriguez must be enjoined and restrained by Order of this Court.

**COUNT VI**

**BREACH OF FIDUCIARY DUTY,
AND DUTY OF GOOD FAITH AND FAIR DEALING**

64.    Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

65.    As Danaher's Vice President of Talent, Rodriguez was in a special relationship with Danaher -- a relationship requiring his utmost fidelity, integrity, and trust.

66.    By improperly accessing Danaher proprietary information, deleting files, removing files and failing to return it during his employment, Rodriguez breached his fiduciary and good faith and fair dealing duties to Danaher.

67.    As a result, Danaher has been injured and faces irreparable injury.  Danaher is threatened with losing key candidates and employees, income, goodwill and possibly intellectual property and customer relationships for which a remedy at law is inadequate and thus, Rodriguez must be enjoined and restrained by Order of this Court.

**COUNT VII**

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT BY RODRIGUEZ**

68.    Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

69.    Rodriguez's actions in destroying electronic files (protected information) and downloading to electronic storage devices Confidential Information from Danaher's computer systems (protected information) for a reason he knew was not authorized and during a time in which he knew such access would not have been authorized had Danaher known Rodriguez

12704993v.3

reviewed his April 21, 2010 performance evaluation constitute violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Rodriguez's actions in destroying and downloading the data exceeded his authorization to use Danaher's computer systems.

70.     Rodriguez was only authorized to use Danaher's computer systems, which operate across state lines and on which interstate commerce is conducted, to further advance the business interests of Danaher and was prohibited from using the systems or the data contained therein for his own purposes.   When Rodriguez downloaded and deleted evidence of downloading Danaher's electronic data for himself, he ceased to be an agent of Danaher and acted for his own benefit.

71.     The Danaher computer systems are used extensively in interstate commerce as they assist in the management and operation of Danaher's business operations throughout the United States.

72.     Rodriguez deleted from the computer that Danaher assigned to him files that he knew incriminated him.  Thus, Rodriguez acted with intent to defraud Danaher as that phrase is defined in the CFAA, and obtained a thing of value, namely Danaher's Confidential Information.

73.     Rodriguez's actions are part of a scheme to injure and harm Danaher and its business operations.  He acted in a calculated and dishonest method with an intention to defraud Danaher and to obtain, use and/or disclose Danaher's Confidential Information, thereby damaging the integrity of its data through his efforts.

74.     Danaher has suffered losses and damages by reason of these violations in excess of $5,000.00 in less than a one-year period of time.  Specifically, by installing a software program intended to delete files on his company computer and then deleting more than 15,000

files because of the program, Rodriguez impaired the integrity and availability of data on the computer and destroyed Confidential Information.  The deletion of this information has also made it difficult, if not impossible, to understand what happened to Danaher's Confidential Information.  Furthermore, by downloading a significant number of Danaher's files to various electronic media storage devices, Rodriguez diminished the confidentiality of Danaher's Confidential Information.  This misappropriation and deletion of Danaher's Confidential Information as well as forensic efforts to investigate and remediate the situation exceeds $5,000.00 in addition to injury to goodwill, customer relationships, revenues and intellectual property.

75.   Danaher's losses relate to the costs incurred in assessing the loss of its data, as well as costs and expenses incurred in order to recover or replace the data.

## COUNT VIII

### INJUNCTIVE RELIEF

76.   Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

77.   Danaher is entitled to injunctive relief for Rodriguez's improper behavior.

78.   Danaher is also entitled to injunctive relief restraining Rodriguez's breaches of his contractual and fiduciary obligations, use, disclosure, inevitable disclosure, acquisition, conversion and/or other misappropriation or threatened misappropriation of Danaher's Confidential Information, which includes trade secrets, and other unfair competition against Danaher, including the possible threat of solicitation of Danaher's employees and tortious interference of contracts and business relationships.  Further, Danaher can demonstrate a probable right to recovery under each cause of action plead.

79.   Rodriguez's improper actions will probably continue unless this Court restrains

them; therefore, Danaher is subject to imminent harm.  Further, that harm will cause an irreparable injury to Danaher's goodwill and possibly its employee and customer relationships and intellectual property that cannot adequately be compensated through any legal remedy. Accordingly, the Court should issue an injunction enjoining Rodriguez as follows:

     a.  Rodriguez shall not use, disclose, or acquire Danaher's Confidential Information;

     b.  Rodriguez shall return within 24 hours all Confidential Information belonging to Danaher in both hard copy and electronic form;

     c.  Rodriguez shall turnover within 24 hours Rodriguez's personal computer(s) and other electronic media storage devices used to download any of Danaher's electronic information for a forensic evaluation to determine how he has disseminated any electronic information belonging to Danaher and to remove any such information from such device(s); and

     d.  Rodriguez shall also return all Confidential Information belonging to Danaher in both hard copy and electronic form within 24 hours of its future discovery.

## ATTORNEYS' FEES

80.    Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

81.    Because of Rodriguez's wrongful and/or actionable conduct as described herein, Danaher has been forced to retain the undersigned attorneys.  Accordingly, Danaher is entitled to recover reasonable and necessary attorneys' fees under the agreements at issue and all applicable statutes and authorities.

## PUNITIVE DAMAGES

82.     Danaher incorporates all previous paragraphs by reference as if fully set forth herein.

83.     Rodriguez's tortious conduct was aggravated by the kind of willfulness, wantonness and malice for which the law allows the imposition of punitive damages. Rodriguez's conduct was intentional, willful and without justification or excuse.

84.     Rodriguez's actions were taken with gross indifference to the rights of Danaher and with conscious intent to harm Danaher.  To punish such actions and deter others from similar wrongdoing, Rodriguez should be assessed punitive damages in an amount to be determined by the trier of fact.

## DEMAND FOR JURY

85.     Danaher demands a jury trial and tenders the appropriate fee with this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Danaher Corporation prays for the following relief:

A.     The Court should order that Rodriguez, along with his agents, employers, attorneys and those persons in active concert or participation with him, be enjoined as follows:

    1.     Rodriguez shall not use, disclose, possess or acquire Danaher's Confidential Information;

    2.     Rodriguez shall return within 24 hours all Confidential Information belonging to Danaher in both hard copy and electronic form;

    3.     Rodriguez shall turnover within 24 hours Rodriguez's personal computer(s) and other electronic media storage devices used to download any of Danaher's electronic information for a forensic evaluation to determine how he has disseminated any electronic information belonging

to Danaher and to remove any such information from such device(s); and

4.      Rodriguez shall also return all Confidential Information belonging to Danaher in both hard copy and electronic form within 24 hours of its future discovery;

B.      The Court should award Danaher damages it has suffered, including but not limited to lost profits, in an amount to be proven at trial;

C.      The Court should award Danaher attorneys' fees and the costs of this action;

D.      The Court should award Danaher compensatory and/or punitive damages for Rodriguez's misappropriation of its Confidential Information;

E.      The Court should award Danaher applicable pre-judgment interest; and

F.      The Court should award Danaher all other legal and equitable relief to which Danaher is entitled.


DATED:  September 22, 2010

Respectfully submitted,

By: s/Bobby G. Pryor_____
            Bobby G. Pryor
            State Bar No. 16373720
            Dana G. Bruce
            State Bar No. 03232032
            Pryor & Bruce
            302 N. San Jacinto
            Rockwall, Texas 75087
            972.771.3933

            MICHAEL D. WEXLER (PRO HAC VICE TO BE FILED)
            State Bar No. 06207847 (IL)
            131 S. Dearborn Street, Suite 2400
            Chicago, Illinois 60603
            Telephone: (312) 460-5000
            Facsimile: (312) 460-7559
            *Attorneys for Plaintiff Danaher Corporation*

12704993v.3